THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA GALVAN,

                Plaintiff,

v.                                                             CV 14-619 KG/WPL

THE BOARD OF COUNTY COMMISSIONERS
FOR CURRY COUNTY, NEW MEXICO, a political sub-division of
The State of New Mexico, TORI SANDOVAL, in her
individual capacity as Administrator of the
Curry County Detention Center,
And LANCE PYLE, in his individual capacity as Curry
County Board of County Commissioners Administrator,

                Defendants.

MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Defendants Board of County Commissioners for Curry County ("the Board") and Lance Pyle's Motion for Summary Judgment No. II: Failure to Exhaust Under the Prison Litigation Reform Act, filed on March 11, 2015, (Doc. 38).  Plaintiff Veronica Galvan filed a response on March 26, 2015, (Doc. 50), and the Board and Pyle filed a reply on April 6, 2015, (Doc. 61).  On April 9, 2015, Defendant Tori Sandoval filed a Notice of Joinder in Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment No. II: Failure to Exhaust Under the Prison Litigation Reform Act.  (Doc. 68).

      The Court previously dismissed Galvan's 42 U.S.C. § 1983 official capacity claims against Sandoval and Pyle, the Eighth Amendment claims, and the Equal Protection claims. (Doc. 74).  The following claims remain outstanding: 1) Section 1983 Fourteenth Amendment Due Process claims against the Board and against Sandoval and Pyle in their individual capacities; and 2) claims under the New Mexico Tort Claims Act ("NMTCA") against these same Defendants.

The present motion addresses only the Section 1983 claims.  Based on a review of the briefing, the pleadings, and applicable law, the Court will grant the Motion for Summary Judgment, dismissing without prejudice the Fourteenth Amendment Due Process claims against Defendants.  The Court will also decline to exercise supplemental jurisdiction over the state claims and dismiss them without prejudice.  The Court will find as moot all remaining pending motions, including Defendants' Motion for Summary Judgment No. I: Notice Under the New Mexico Tort Claims Act (Doc. 37); Defendant Tori Sandoval's Motion for Summary Judgment No. 1: Notice Under the New Mexico Tort Claims Act (Doc. 39); Defendants' Motion for Summary Judgment No. III: Summary Judgment for the Board of County Commissioners and Lance Pyle (Doc. 41); Defendants' Motion in Limine No. I (Doc. 43); and Defendant Sandoval's Amended Motion for Summary Judgment No. III: Joinder in Co-Defendants' Motion for Summary Judgment No. III and Supplemental Argument as to Section 1983 Claims and New Mexico Tort Claims Act Section 41-4-12 (Doc. 45).

*A.  Background*

The Court construes the factual record and reasonable inferences therefrom in the light most favorable to Galvan.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

Galvan was arrested and booked into the Curry County Detention Center ("CCDC") on January 21, 2014.  Kimberly Moore, another inmate, verbally threatened to "mess up" Galvan and called her a snitch.  Galvan informed at least four Detention Officers that she should not be housed in the same facility as Moore because Galvan was a friend of the Jaime Perez family.  Moore's husband, Louis Guerra, pled guilty to killing Daniel Perez, Jaime Perez's brother.  Detention Officers recorded Galvan's concerns in the Annex logbook.

On the first day of her incarceration, Galvan requested that she receive a bunk in a cell for her protection, as opposed to a bunk in the open "freeway" area of the Detention Center Women's Annex.  Detention Center staff moved Galvan to a cell.  Galvan came out of her cell to watch television, but she stayed close to Detention Officers so that nothing would happen to her. The Detention Officers avoided Moore.  Galvan also asked twice to be moved to a different facility, but Detention Officers did not move her.

On February 1, 2014, Kimberly Moore severely beat Galvan without provocation and without any attempt by Galvan to fight back.

The Detention Center had an internal grievance process that allowed inmates to raise matters with Detention Center staff through requests or grievances.  First, inmates were to contact their POD officer.  If the POD officer could not resolve the issue, the officer was to call his or her sergeant to assist with the matter.  Inmates could then complete an Inmate Request or Grievance Form, which the Shift Supervisor was required to answer within one day.  The form allowed inmates to submit a written request, grievance, appeal, medical request, or "other." Appeals were available through the chain of command.

Galvan was familiar with the request and grievance process from prior incarcerations and had previously used the process.  Galvan did not submit a written request or grievance regarding her housing with Moore or Moore's attack.  Galvan, however, never received an inmate handbook outlining the grievance procedure; nor did any Detention Officer take her complaint to a supervisor or inform her that she had to fill out a grievance form.

Galvan remained incarcerated at CCDC until May 30, 2014, on which date she was transferred to the Department of Corrections.  Throughout the duration of her incarceration at

CCDC, Galvan performed laundry duties, served dinner trays, and worked as a POD porter. Laundry duties required Galvan to leave her cell, coming and going throughout the entire day.

Galvan filed her original Complaint on July 7, 2014, (Doc. 1), and she filed her First Amended Complaint on July 8, 2014 (Doc. 4). Galvan was released from prison on October 21, 2014.

### B. Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[1] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics*, 912 F.2d at 1241. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

### C. Discussion

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[1] Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion means that the prisoner completes the available grievance process and administrative appeals before suing in federal district court.  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  An administrative remedy is "available" if it is "capable of use for the accomplishment of a purpose."  *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)).  An administrative remedy may be made unavailable if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail [her]self of [the] administrative remedy."  *Id.*

Exhaustion of administrative remedies permits prison officials to resolve matters without court intervention, screens out certain frivolous claims, and creates an administrative record for potential court review.  *Ross*, 365 F.3d at 1184.  Inmates must complete the administrative review process in accordance with the rules of the grievance process at their particular prison.  *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Failure to exhaust administrative remedies is an affirmative defense.  *Jones*, 549 U.S. at 212.  Defendants bear the burden of proving that Galvan did not exhaust her administrative remedies.  *See Tuckel*, 660 F.3d at 1254.  If Defendants satisfy this burden, Galvan must then show that she either exhausted her administrative remedies or administrative remedies were unavailable to her.  *See id.*

Defendants argue that Galvan failed to exhaust her administrative remedies.  They assert that Galvan admitted that she was aware of the internal request and grievance process at the CCDC, yet Galvan, nonetheless, failed to submit written grievances to CCDC regarding Moore's presence in the same facility or the attack.  Further, Defendants contend that while Galvan was

5

transferred to the Department of Corrections prior to her filing of the original Complaint and released from prison with litigation pending, the exhaustion requirements of the PLRA still apply.  (Doc. 38) at 6-7 (citing *Turrietta v. Barreras*, 91 F. App'x 640, 641 (10th Cir. 2004) (unpublished)); (Doc. 61) at 5-6 (citing *Hopkins v. Addison*, 36 F. App'x 367 (10th Cir. 2002) (unpublished)).

Galvan argues that she never received an inmate handbook discussing the grievance process.  Nor did the Detention Officers inform her that she needed to fill out a written grievance form.  Galvan points out that her oral complaints were documented in the Annex logbook and that this documentation substantially complied with the written notice requirement of the grievance procedure.  She maintains that the Detention Center's policies required that Detention Officers investigate further her oral complaints and notify a supervisor, but they failed to do so. Therefore, Galvan maintains, she exhausted all available administrative remedies.

Galvan also argues that the PLRA exhaustion requirement does not apply to this case because she was not incarcerated at the CCDC, but rather with the Department of Corrections, at the time she filed her lawsuit.  (Doc. 50) at 9-10 (citing *Cowart v. Erwin*, No. 3:10-CV-1800-G (BN), 2013 WL 6188731, at *4 (N.D. Tex. Nov. 26, 2013) (unpublished)).  Galvan points out that in *Turrietta*, cited by Defendants, the jail to which the plaintiff was transferred was managed by the same entity as plaintiff's original jail, and the two jails maintained the same grievance procedures.  91 F. App'x at 641.  In contrast, Galvan argues that the CCDC and Department of Corrections are not run by the same entity and there is no evidence of a grievance procedure Galvan could have used at the Department of Corrections.  Finally, Galvan argues that the exhaustion requirement does not apply to a plaintiff who is released from custody while the case is pending.

*1. Applicability of PLRA Exhaustion Requirement*

The Tenth Circuit agrees with other circuits that "it is the plaintiff's status at the time [s]he files suit that determines whether § 1997e(a)'s exhaustion provision applies." *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005). That is, if a plaintiff is incarcerated at the time she files her complaint, exhaustion requirements apply; if she is no longer incarcerated when she files her complaint, exhaustion requirements do not apply. *See id.*

In this case, Galvan was still incarcerated at the time she filed her complaint. However, because Galvan was incarcerated at the Department of Corrections rather than at the CCDC at the time she filed her original Complaint, this Court will examine whether the administrative exhaustion requirements still apply.

Galvan contends that *Cowart* supports the proposition that the exhaustion requirements under the PLRA do not apply where the plaintiff is incarcerated at a different prison at the time she files her complaint. This is not what *Cowart* provides, however. No. 3:10-CV-1800-G (BN), 2013 WL 6188731, at *4. Instead, *Cowart* states that the plaintiff was not required to complete the second step of the alleged offending jail's grievance process because he had been transferred to a different detention center. *Id.* That is, plaintiff had completed all steps of the grievance process possible until the time that he was transferred. *See id.*

Further, the Tenth Circuit has found that a transferred inmate was not excused from exhausting administrative remedies where he was transferred to a detention center run by the same private entity as his original detention center, and both maintained inmate grievance procedures. *Turrietta*, 91 F. App'x at 641. The Court noted that "[t]he mere fact that [plaintiff] was transferred and confined does not direct the conclusion that he was thereby prevented from filing a grievance, particularly since he was able to submit, and did submit, requests for medical

7

treatment during that time." *Id.* at 642 (citation omitted).  In a case before the Western District

of Oklahoma, the court cited a Fifth Circuit case for the proposition that "transfer from one

prison to another does not excuse failure to exhaust where the plaintiff 'was aware of the basis

for his grievance during [his incarceration in the offending facility] but did not utilize the

administrative remedies available at [that facility] to seek redress.'"  *Figueroa v. Dep't of Corr.*,

No. CIV-10-760-M, 2012 WL 1072215, at *5 (W.D. Okla. Mar. 8, 2012) (unpublished) (quoting

*Hill v. Epps*, 169 F. App'x 199, 200-01 (5th Cir. 2006) (unpublished)).

Galvan cites no authority to show the PLRA administrative exhaustion requirement does

not apply to her based on a transfer to another prison approximately four months after the

incident with Moore.  Assuming the PLRA administrative exhaustion requirement applies here,

the Court next examines whether Galvan exhausted her available administrative remedies.

   2. *Whether Galvan Exhausted Available Administrative Remedies*

The CCDC Inmate Orientation Handbook provides a grievance policy as follows:

> If you have a problem or question, you must first contact your POD Officer.  If
> the POD Officer cannot answer the question or concern, you are to fill out an
> Inmate Request or Grievance Form.  If you need assistance completing the
> Grievance Form, contact the POD Officer.  Your grievance form will be
> forwarded to the Shift Supervisor to be answered within one (1) business day of
> the incident or complaint.  Grievances may be forwarded through the chain of
> command and will be answered within five (5) business days.  You may appeal
> the decision of the Shift Supervisor through the chain of command.

(Doc. 38) Ex. 2 at 4.  Galvan agreed in her deposition that she was familiar from previous

incarcerations with the process for grievance.  (Doc. 38) Ex. 1 at 39-41.  She also completed

Inmate Request Forms (the same form used for grievances if the grievances checkbox is marked)

six times, including on January 2, 2009; August 29, 2012; September 2, 2012; September 8,

2012; February 1, 2014; and February 10, 2014.  (Doc. 38) Exs. F–J-2.  Galvan never submitted

an inmate request or grievance related to Moore's presence in the same facility or attack.

Galvan contends she did not receive a copy of the inmate handbook and no Detention Officer informed her that she needed to complete a grievance form.  But the law is clear that her knowledge or lack of knowledge of the administrative grievance procedures is irrelevant for purposes of PLRA exhaustion of administrative remedies.  "[T]he mandatory exhaustion requirement cannot be excused on the ground that the detainee was not informed of the grievance procedure." *Turrietta*, 91 F. App'x at 642.  Where an inmate never receives written materials or advisement on a prison's grievance process upon informing a prison guard that he would like to file a complaint, and the prison does nothing to "frustrate or prevent [her] from utilizing those procedures," exhaustion of the administrative grievance procedures is still required.  *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 273 (10th Cir. 2003) (unpublished).  "[E]ven accepting plaintiff's allegations that [s]he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement." *Simmons v. Stus*, 401 F. App'x 380, 381-82 (10th Cir. 2010) (unpublished).

Galvan does not allege that Detention Officers frustrated or prevented her from using the grievance procedures at CCDC.  Further, although she complained to POD Officers regarding Moore's presence in the same facility, she did not continue the grievance process by filling out an Inmate Request or Grievance Form.  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust [her] administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  In addition, "the doctrine of substantial compliance does not apply." *Id.*  As such, the Annex log book records of Galvan's oral complaints do not satisfy the exhaustion requirements.

In accordance with the foregoing, the Court finds that Galvan did not exhaust the available administrative remedies at CCDC. As a result, the Court will dismiss without prejudice Galvan's § 1983 Fourteenth Amendment Due Process claims under 42 U.S.C. § 1997e(a).

3. *State Claims*

In light of the foregoing, only Galvan's NMTCA claims remain. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1293 (10th Cir. 2008). Under 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [supplemental] jurisdiction. . . ." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the interests of judicial economy, convenience, fairness, and comity would not be served by retaining supplemental jurisdiction over the state claims. *Id.* Taking into consideration those factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over Galvan's NMTCA claims. Consequently, this Court will dismiss the NMTCA claims without prejudice so Galvan may pursue these claims in state court.

D. *Conclusion*

Based on the foregoing, the Court dismisses all of Galvan's Fourteenth Amendment Due Process and state claims without prejudice. The Court grants Defendants' Motion for Summary Judgment No. II: Failure to Exhaust Under the Prison Litigation Reform Act, filed on March 11, 2015, (Doc. 38), and declines to exercise supplemental jurisdiction over Galvan's state claims.

The following motions are rendered moot by this decision: Defendants' Motion for Summary Judgment No. I: Notice Under the New Mexico Tort Claims Act (Doc. 37); Defendant Tori Sandoval's Motion for Summary Judgment No. 1: Notice Under the New Mexico Tort Claims Act (Doc. 39); Defendants' Motion for Summary Judgment No. III: Summary Judgment for the Board of County Commissioners and Lance Pyle (Doc. 41); Defendants' Motion in Limine No. I (Doc. 43); and Defendant Sandoval's Amended Motion for Summary Judgment No. III: Joinder in Co-Defendants' Motion for Summary Judgment No. III and Supplemental Argument as to Section 1983 Claims and New Mexico Tort Claims Act Section 41-4-12 (Doc. 45).

        IT IS SO ORDERED.

                                    UNITED STATES DISTRICT JUDGE